IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN DOWNEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 2:10cv438-WHA |
| ) | |
| ALFA INSURANCE CORPORATION, ) | (wo) |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #54), filed by Defendant Alfa Mutual Insurance Company on February 24, 2012.

The Plaintiff, Susan Downey, filed a Complaint in this case on May 18, 2010, and filed two Amended Complaints. In the Second Amended Complaint, Downy brings a claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. Alfa has filed a Motion for Summary Judgment as to Downey's claim.

For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes

demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovant:

The Plaintiff, Susan Downey ("Downey"), has brought a gender discrimination claim for denial of a promotion to a Claims Adjuster position in October 2008. Downey was hired by the Defendant Alfa Mutual Insurance Company ("Alfa") as a Customer Service Representative in 1993. In September of 2008, Downey applied for the position of Claims Adjuster. Downey was interviewed by District Manager Skip Allen ("Allen") and Harold Oakes ("Oakes"), Claims Regional Manager. Allen and Oakes also interviewed a man, Tim Wilson ("Wilson"). Jerry Johnson ("Johnson"), Senior Vice President, did not participate in Downy's interview, although Downey understood that he was scheduled to attend. Johnson did meet briefly with Wilson, Allen, and Oakes during Wilson's interview. After being interviewed, Downey was told on October 23, 2008 by Allen that Wilson would be hired for the Claims Adjuster position. The decision makers in the selection of Wilson over Downey were Allen and Oakes.

In December 2008, Downey filed an EEOC charge complaining of gender discrimination in the selection of Wilson. In its response to the EEOC charge, Alfa stated that Allen and Oakes considered Wilson the best candidate because Wilson's background included extensive knowledge in Exceed, a policy administration computer system; Wilson had an excellent reputation in problem-solving; and Wilson possessed other skills. (Doc. #54-6). In support of the Motion for Summary Judgment, Alfa states that Downey and Wilson were both strong candidates for the Claims Adjuster position, but Wilson was selected because he performed better in his interview through his insightfulness and confidence; he had experience as an Exceed software specialist, including an ability to analyze and resolve integration problems concerning Exceed; Wilson received more assertive support from his supervisor; and Wilson had prior underwriting experience. (Doc. #55 at p.7-8).

In July 2009, Alfa transferred Wilson to a Claims Adjuster position which opened up at another office, and placed Downey in the Claims Adjuster position for which Wilson had earlier been selected over Downey.

## IV. DISCUSSION

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of gender under Title VII by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). That is, even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will sometimes be available to an employer in such a case." *Chapman v. AI Transport*, 229 F.3d 1012, 1025 n.11

(11th Cir. 2000).

Alfa concedes for purposes of the Motion for Summary Judgment that Downey can satisfy the elements of her prima facie case of discrimination. Alfa states, however, that Downey cannot establish pretext in Alfa's legitimate non-discriminatory reasons for the selection of Wilson over Downey.

Downey contends that she has produced four categories of circumstantial evidence to defeat summary judgment which are as follows: she has refuted each of the articulated reasons, she has presented evidence allowing for the inference that reliance on subjective criteria is a pretext for discrimination, she has produced evidence that her qualifications vastly exceeded Wilson's, and she has produced evidence that women are under represented in the Claims Adjuster position. The court, however, is not persuaded by the majority of these arguments.

The subjective nature of the reasons given by Alfa is not sufficient to establish pretext, because subjective reasons are permissible, *see Denney v. City of Albany,* 247 F.3d 1172, 1185 (11th Cir. 2001); Downey has not shown that her qualifications sufficiently exceeded Wilson's so as to establish pretext because they are not of such weight and significance that no reasonable person could have chosen Wilson over her, *see Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007); and Downey's statistical evidence consisting merely of the percentage of women in the Claims Adjuster position is not sufficient to establish pretext, *see Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir. 1991) (stating that statistics without an analytic foundation are virtually meaningless). It appears, however, that a question of fact may have been raised by the evidence in support of and in opposition to the articulated reasons for Wilson's selection which may sufficiently undermine Alfa's reliance on

those reasons. Therefore, the court will focus on that contention by Downey.

There are two preliminary issues raised by Downey which must be addressed before the court turns to the evidence regarding the articulated reasons.

## A. Preliminary Issues

First, Downey has argued that the court should find that the reasons articulated in support of the Motion for Summary Judgment, but not presented to the EEOC, are pretextual on that basis. Downey cites the court to *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926 (11th Cir. 1995). The Eleventh Circuit has, however, clarified that it is the **inconsistency** of reasons articulated by the employer which can establish pretext. *See Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998). In *Tidwell*, the court cited earlier precedent for the proposition that, although a company gives differing explanations for a decision, there is no evidence of pretext if the reasons are not inconsistent. *Id.* (citing *Zaben v. Air Products & Chem., Inc.*, 129 F.3d 1453, 1458-59 (11th Cir.1997).

The reasons articulated to the EEOC were that Wilson had extensive knowledge of Exceed, a policy administration computer system; Wilson's excellent reputation in problem solving; and Wilson's other skills. In support of summary judgment, Alfa has additionally articulated that Wilson had a stronger recommendation from his supervisor, Wilson had prior underwriting experience, and Wilson had a better interview. The three reasons Downey has pointed to as being additional reasons, are not inconsistent with the reasons given the EEOC. The court cannot conclude, therefore, that the three additional reasons are evidence of pretext merely because they were not presented to the EEOC. *See Keaton v. Cobb Co.*, 545 F. Supp. 2d 1275, 1305 (N.D. Ga. 2008) (additional reasons not presented to EEOC were not pretext because

were not inconsistent with prior reasons), *aff'd*, No. 08-11220, 2009 WL 212097 (11th Cir. Jan. 30, 2009).

Second, Downey asks the court not to consider the newly articulated reasons because they were only provided in response to leading questions by Alfa's counsel in depositions, even though they were not mentioned earlier in the deposition, and so should be stricken as being akin to sham affidavit evidence, citing *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). For example, in his deposition Oakes was asked whether there was any other information he received that was relevant to his decision and said "no," Oakes Dep. at p.80, but when his counsel asked whether the fact that Wilson worked as an auto underwriter lead him to believe Wilson was better qualified, Oakes said that it was one of the factors in their selection. *Id.* at p.82 12-16. The rationale of *Van T. Junkins*, and cases applying it, do not apply however to testimony given within the context of a single deposition. The court, therefore, declines to strike the deposition testimony on that basis.

Downey also asks the court not to consider deposition evidence because it was given in response to leading questions, citing *Morales-Arcadio v. Shannon Produce Farms, Inc.,* No. 605cv62, 2007 WL 2106188 (S.D. Ga. July 18, 2007). Alfa responds that because the deposition was noticed by Downey, Alfa's counsel was questioning the witnesses on cross-examination, where leading questions are permissible. Because the evidence in question can be reducible to admissible form, *cf. Rowell v. Bellsouth Corp*., 433 F.3d 794, 799-800 (11th Cir. 2005), the court will consider the testimony, but will revisit the issue if called upon to do if there are designations of deposition testimony for trial containing what Downey contends are leading questions.

B.  Downey's Evidence to Establish Pretext of Articulated Reasons

With respect to the reasons articulated by Alfa, Downey has both specifically addressed what she perceives as the failings of each reason articulated for the selection of Wilson over her, and has also advanced the overarching argument that Alfa's stated reliance on qualifications and interview performance of Wilson is not worthy of credence because that information was not known to Oakes at the time the decision was made to hire Wilson.  It is that contention to which the court now turns.

It is undisputed that Allen and Oakes were the decision makers in the selection of Wilson over Downey.  In addition, Alfa has not differentiated between the decision-making roles of Allen and Oakes in the articulation of the reasons for Wilson's hire.  In describing the decision-making process with respect to the selection of Wilson over Downey, Alfa has explained that Johnson's role in the selection of Claims Adjusters typically is to meet with the candidate recommended by his subordinates, and that he has veto authority with respect to a decision made by them. (Doc. #55 at p. 7).  Alfa has stated in the context of this case, however, that decision makers Allen and Oakes wanted Johnson to meet both Wilson and Downey during their interviews.  Alfa points out that Downey stated in her deposition that she was "set up to interview with Harold Oakes and Jerry Johnson on that day . . . ."  Downey Dep. at p. 38: 17-19.  Alfa states, without explanation, that Johnson was not available for Downey's interview.  According to Allen's testimony, Johnson did stop by during Wilson's interview, however, and Allen and Oakes invited him in.   Allen Dep. p. 92:2-5.

Johnson's deposition testimony is not consistent with Alfa's explanation of the selection process for Wilson.  Johnson testified that he does not recall that he was going to be present at an

8

interview for Downey.  Johnson Dep. at p. 17: 2-6.  In fact,  Johnson stated that he did not recall even being told by Oakes and Allen that Downey was being considered for the Claims Adjuster position. *Id.* at p.20: 13:19.  Johnson also testified that Oakes and Allen did not tell him about candidates they were considering for the vacancy Wilson filled.  *Id.* at p.20: 9-12.  Johnson was, however, aware that Wilson was being considered for the Claims Adjuster job at the time Wilson was being considered, because Oakes and Allen told him that.  *Id.* at 19-: 23-20:19.  When asked why Oakes and Allen told him that Wilson was being considered, Johnson stated  "[b]ecause they told me they were considering hiring [Wilson]."  *Id.* at p.20: 16-19.  He further testified that he would not think that they would have told him this in Wilson's presence, *id.* at p.21: 1-5, supporting a contention that he was told before Wilson's interview.  In his deposition, Johnson explained that he typically he likes to meet with "the final candidate that is being considered" for a Claims Adjuster position.  *Id.* at p.17 :2-23.   Therefore, when taken in a light most favorable to the nonmovant, Johnson's testimony that he was told by Allen and Oakes that they were considering hiring Wilson, apparently ahead of Wilson's interview; Allen's testimony that Johnson stopped by Wilson's interview; and Johnson's testimony that he was not aware that Downey was being considered, viewed against the backdrop of Johnson's usual practice of meeting with "the final candidate," would allow a reasonable jury to conclude that the decision to hire Wilson had been made by Oakes and Allen before the interview of Wilson by them.

    While selection before the interview is not necessarily indicative of pretext itself , *cf. Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344 (11th Cir. 2007), in this particular case, the evidence that selection occurred before the interview could call into question Alfa's reliance on reasons for Wilson's selection if, as Downey contends, those reasons

were based on information the decision maker did not learn until the interview.

As to the reasons of Wilson's performance during the interview, his supervisor's recommendation, his Exceed experience, and his prior underwriting experience, it is clear that Oakes learned that information at or after the interview.  For example, Wilson's supervisor's recommendation of Wilson was mentioned by Allen to Oakes after the interview of Wilson.  Oakes Dep. at p. 89:5-15.   In his deposition, Oakes also explained that during Wilson's interview, Wilson talked about his roles at Alfa, including underwriting and his work on the Exceed team.  *Id.* at 44: 12-16.  When asked whether his knowledge of Wilson's background and experience at Alfa came from what Wilson told Oakes at the interview, or whether Oakes had some independent knowledge before the interview of what Wilson's background was, Oakes responded, "I don't think I had any independent [sic] prior to that."  *Id.* at p. 44: 19-45:2.

With regard to the remaining articulated reason, namely, Wilson's problem-solving skills, the timing of Oakes's knowledge is somewhat unclear because the scope of this articulated reason is unclear.  Alfa takes the position in its brief in support of summary judgment that Wilson's problem-solving ability related to his experience with Exceed, (Doc. #55), which, as noted above, was learned by Oakes during the interview.  Accepting the reason as articulated in the brief, therefore, and viewing the evidence in a light most favorable to the non-movant, there is a question of fact as to whether Oakes was aware of any problem-solving abilities of Wilson based on his work with Exceed at the time the decision was made to hire Wilson.

As Downey points out, while at various points in his deposition Oakes referred to problem-solving abilities of Wilson in his work with Exceed, at other times Oakes referred to problem-solving abilities of a "Business Analyst" generally.   In other words, it may be that the

10

articulated reason of Wilson's problem-solving skills was not based on Wilson's own skills at all, but was instead based on problem-solving skills possessed by all Business Analysts. Even accepting that the problem-solving skills articulated as a reason for his hire were based on Wilson's title as a Business Analyst at the time of his selection as Claims Adjuster, however, the court has not been pointed to evidence that Oakes had knowledge of Wilson's job experience before Oakes interviewed Wilson. In fact, Oakes testified, as noted above, that he learned of Wilson's background with Alfa at the interview. Additionally, it is not clear from Oakes's deposition when he formed his impression of the problem-solving skills of Business Analysts generally. In his deposition, Oakes was asked about his understanding of the job of a Business Analyst, and then asked whether he had that understanding because his own wife is a Business Analyst. Oakes answered, "[w]ell, she wasn't at the time, but I do know it now." Oakes Dep. at p. 94: 2-14. Alfa argues that Oakes's wife's job duties are merely consistent with what Oakes knew at the time of Wilson's selection, but the evidence, taken in a light most favorable to the nonmovant, could reasonably support the inference that Oakes formed his impression of the duties of a Business Analyst generally after he made the decision to choose Wilson. Therefore, a reasonable jury could find that reliance on problem-solving abilities of Business Analysts generally also is not worthy of credence.

      Taken in a light most favorable to Downey, therefore, the evidence supports a reasonable inference that the decision to choose Wilson was made before Alfa's decision maker, Oakes, learned the information pointed to to support those reasons. Furthermore, under a theory that Oakes and Allen together made the decision to select Wilson before the interview, a reasonable jury could conclude that even if Allen had knowledge of Wilson's background at the time of the

decision, because he did not discuss that information with Oakes, Wilson's background did not play a part in the decision by Oakes and Allen to select Wilson.  Accordingly, the evidence at this point in the proceedings is sufficient to undermine all of the reasons articulated for Wilson's selection.  To be clear, the court is not suggesting that merely because the evidence would allow a reasonable jury to conclude that Wilson had been selected prior to the interview of Wilson by Allen and Oakes, pretext has been established.  It is evidence of the timing of the decision, when taken in a light most favorable to the nonmovant, combined with Oakes's deposition testimony which can be reasonably read to say that he was not aware of Wilson's qualifications until the interview with Wilson, which calls into question all of the reasons articulated for the selection of Wilson over Downey, thereby establishing pretext.

While the court certainly agrees with Alfa that a plaintiff's ultimate burden in a Title VII case is to prove intentional discrimination, "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Reeves*, 530 U.S. at 149.   This is not a case in which the "evidence that supports the employer's case," *id.* at 148-49, warrants summary judgment.

## V.  CONCLUSION

As explained above, the deposition testimony in this case presents questions of fact which, when viewed in a light most favorable to the nonmovant, would allow a reasonable jury to discount reliance by the decision makers on the reasons articulated for selecting a male employee for promotion instead of the Plaintiff and decide, based on all the evidence, that Downey was not initially given the promotion because she is a woman.  Those questions may ultimately be resolved in favor of Alfa at trial, but because they reasonably could be resolved in

a manner which would render Alfa liable under Title VII, the Motion for Summary Judgment (Doc,. #54) is due to be and is hereby ORDERED DENIED.

Done this 11th day of April, 2012.

                                          /s/ W. Harold Albritton
                                          W.  HAROLD ALBRITTON
                                          SENIOR UNITED STATES DISTRICT JUDGE